UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


RODNEY O. HAGGARD,                     )
                                        )
    Plaintiff/Counter-Defendant,       )
                                        )         CIVIL ACTION NO.
VS.                                     )
                                        )         3:10-CV-0800-G
BANK OF THE OZARKS, INC.,               )
                                        )
    Defendant/Counter-Plaintiff/       )
    Third-Party Plaintiff,             )
                                        )
VS.                                     )
                                        )
McKINNEY MEADOWS, LP,                   )
                                        )
    Third-Party Defendant.             )


## MEMORANDUM OPINION AND ORDER

Before the court are the cross-motions for summary judgment filed by the

plaintiff, Rodney O. Haggard ("Haggard") (docket entry 23), and the defendant,

Bank of the Ozarks ("Bank") (docket entry 14).  For the reasons set forth below,

Haggard's motion is granted in part and denied in part and Bank's motion is granted

in part and denied in part.

# I. BACKGROUND

## A. Factual Background

This dispute concerns a guarantor's liability under a limited guaranty agreement governed by the laws of the state of Texas. On October 13, 2007, Bank loaned third-party defendant McKinney Meadows, LP ("Meadows") $1,600,000 to finance the acquisition of a tract of real property in McKinney, Texas. Plaintiff and Counter-Defendant Rodney O. Haggard's Brief in Support of His Motion for Summary Judgment ("Haggard Brief") at 1 (docket entry 24). To evidence this loan, Meadows executed a promissory note (the "note") payable to Bank in the principal amount of $1.6 million. *Id.* To secure repayment of the note, Meadows granted Bank a lien on the acquired property, and Haggard -- a limited partner in Meadows -- contemporaneously executed a guaranty agreement whereby he guaranteed "the last to be repaid $500,000.00 of the principal balance of the Loan and all accrued and unpaid interest thereon from time to time." *Id.*; Brief in Support of Defendant/Counter-Plaintiff Bank of the Ozarks, Inc.'s Motion for Summary Judgment Against Rodney O. Haggard ("Bank Brief") at 2, *attached to* Defendant/Counter-Plaintiff Bank of the Ozarks, Inc.'s Motion for Summary Judgment Against Rodney O. Haggard (docket entry 14) *as* Exhibit 1; *see also* Guaranty Agreement ¶ 1, *located in* Appendix to Plaintiff/Counter-Defendant's Motion for Summary Judgment ("Haggard Appendix") at APP 009 (docket entry 25).

Bank is, and has been, the owner and holder of the note at all times relevant to this dispute.  Bank Brief at 2.

On June 25, 2009, after Meadows failed to pay the note in accordance with its terms, Bank sent both Meadows and Haggard a notice of default and opportunity to cure.  Bank Brief at 3.  On July 8, 2009, Bank sued Meadows and Haggard for allegedly breaching the note and the guaranty agreement, respectively.  *Id.*  That suit was dismissed without prejudice after the parties negotiated and executed a forbearance agreement, which granted a forbearance period that was scheduled to expire on March 30, 2010.  *Id.*

On April 20, 2010, before the forbearance period expired, Haggard commenced this action in federal court, on the basis of the parties' diverse citizenship, seeking a declaratory judgment that Bank cannot pursue him on the guaranty agreement other than for the "last to be repaid $500,000" in principal and the interest accruing on that amount, and requesting that the court award attorney's fees and court costs.  *See* Haggard Brief at 2; Complaint for Declaratory Relief ("Complaint") ¶¶ 3, 17 (docket entry 1).  Bank counterclaimed for breach of the guaranty agreement, seeking recovery of the $500,000 in principal, the interest accruing on the total unpaid principal balance, and costs and attorney's fees.  Defendant/Counter-Plaintiff Bank of the Ozarks, Inc.'s Original Answer and Counterclaim ("Bank Answer") ¶¶ 24-28 (docket entry 6).  Bank also impleaded

Meadows for breach of the note and indemnification.  *See generally* Third-Party

Plaintiff Bank of the Ozarks, Inc.'s Original Third-Party Complaint Against

McKinney Meadows, LP ("Third-Party Complaint") ¶¶ 13-20 (docket entry 9).  On

January 4, 2011, Bank foreclosed on the loan and sold the property securing the loan

for $975,000, which consequently reduced the indebtedness outstanding on the note,

including interest, to $717,999.99.  *See* Status Report By Bank of the Ozarks, Inc.

("Status Report") ¶¶ 6-7 (docket entry 42); *see also* Substitute Trustee's Deed, *attached*

*to* Status Report *as* Exhibit A.

      The provisions of the guaranty agreement at the heart of this dispute are as

follows:

> 1.  <u>Guaranty of Obligation</u>.  (a) The Guarantor
> unconditionally, irrevocably and absolutely guarantees to
> Lender (I) that all obligations and indebtedness evidenced
> by or provided in the Note, the Mortgage and the other
> Loan Documents, will be promptly paid when due and in
> accordance with the terms and provisions thereof . . ., and
> (ii) the prompt and full payment, performance and
> observance, when due, of all other indebtedness, liabilities,
> obligations and duties of every kind and character of
> Borrower to Lender relating in any way to the Loan . . .;
> including, without limitation, interest on all of the above
> amounts as agreed upon between Borrower and Lender, or
> if there is no agreement, at the Highest Lawful Rate, as
> such term is defined in the Note . . .; provided, however,
> the liability of the Guarantor hereunder is limited to the
> last to be repaid $500,000.00 of the principal balance of
> the Loan and all accrued and unpaid interest thereon from
> time to time, it being understood that until the principal
> balance of the Loan is reduced to less than $500,000.00,
> there will be no reduction in the amount guaranteed

hereunder and that the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00.

\* \* \*

4.  <u>No Release from Obligations: Guarantor's Waivers</u>. The obligations, covenants, agreements and duties of the Guarantor under this Guaranty shall not be released or impaired in any manner whatsoever, without the written consent of Lender, on account of any or all of the following: . . . (q) any neglect, delay, omission, failure or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or to foreclose or take or prosecute any action in connection with any lien, security interest or other right of security (including perfection thereof), existing or to exist in connection with, or as security for, any of the Guaranteed Indebtedness, it being the intention hereof that Guarantor shall remain liable as principal on the Guaranteed Indebtedness, notwithstanding any act, omission or thing which might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor . . . .

5.  <u>Payment and Performance of Obligations</u>.  If an Event of Default, as defined in the Mortgage, occurs, Guarantor shall, without notice or demand, and without any notice having been given to Guarantor of the acceptance by Lender of this Guaranty and without any notice having been given to Guarantor of the creating or incurring of such indebtedness, pay the amount due thereon to Lender, . . . and it shall not be necessary for Lender, in order to enforce such payment by Guarantor, first, to institute suit or exhaust its remedies against Borrower or others liable on such indebtedness, or to enforce its rights against any security which shall ever have been given to secure such indebtedness.

\* \* \*

15. <u>Attorney's Fees and Collection Costs</u>. If Guarantor should breach or fail to perform any provision of this Guaranty, Guarantor agrees to pay to Lender all reasonable costs and expenses (including court costs and reasonable attorneys' fees to the extent enforceable under the laws of the State of Texas) incurred by Lender in the enforcement hereof.

Guaranty Agreement ¶¶ 1, 4, 5, 15, *located in* Haggard Appendix at APP 009-011, 013.

## B. <u>Procedural Background</u>

Haggard and Bank have both moved for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).[1] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended,

---

[1]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

## II. <u>ANALYSIS</u>

Suits on contracts are typically well-suited for resolution via summary judgment. See *Resolution Trust Corporation v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (citing *Federal Deposit Insurance Corporation v. Cardinal Oil Well Servicing Company*, 837 F.2d 1369, 1371 (5th Cir. 1988)); see also *Colony Creek, Limited v. Resolution Trust Corporation*, 941 F.2d 1323, 1325 (5th Cir. 1991) ("[B]ecause of the relative simplicity of the issues involved, suits to enforce promissory notes 'are among the most suitable classes of cases for summary judgment.'") (quoting *Lloyd v. Lawrence*, 472 F.2d 313, 316 (5th Cir. 1973)). In this case, the guaranty agreement is "governed by and construed in accordance with the laws of the State of Texas . . . ." Guaranty Agreement ¶ 18, *located in* Haggard Appendix at APP 014. Therefore, the court must apply Texas law to determine the extent of Haggard's liability under the agreement.

### A. <u>Texas Law</u>

A guaranty agreement is the promise of a person or entity to perform the same act that another person or entity is contractually bound to perform. *Shin v. Sharif*, No. 2-08-347-CV, 2009 WL 1565028, at *2 (Tex. App.--Fort Worth June 4, 2009, no pet.) (mem. op.) (citing *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex. App.--Houston [1st Dist.] 1992, writ denied)). Texas law recognizes two distinct types of guaranty: "a guaranty of collection (or conditional guaranty) and

- 8 -

a guaranty of payment (or unconditional guaranty)." *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.--Houston [14th Dist.] 1997, no writ).  The former "is an undertaking of the guarantor to pay if the debt cannot be collected from the primary obligor by use of reasonable diligence," while the latter "is an obligation to pay the debt when due if the debtor does not."  *Id.*  Unlike a guaranty of collection, a guaranty of payment does not require the occurrence of a condition precedent, other than default by the principal debtor, for its enforcement against the guarantor.  *Id.*  A guarantor of payment is primarily liable on the note and he waives any requirement that the holder of the note take action against the maker before pursuing him; a guarantor of payment is thus akin to a "co-maker" of the note in that the holder can enforce it against either party without pursuing the other party first.  *Id.*

Texas courts construe a guaranty agreement as any other contract: the primary concern being to ascertain the true objective intentions of the parties as expressed in the instrument.  *Mid-South Telecommunications Company v. Best*, 184 S.W.3d 386, 390 (Tex. App.--Austin 2006, no pet.) (citing *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996)); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  "[I]t is a firmly established rule that the intention of the parties must be determined primarily from the body of the written instrument itself."  *Commons West Office Condos, Limited v. Resolution Trust Corporation*, 5 F.3d 125, 127 (5th Cir. 1993).  A court must examine the entire document and consider each part with every other part so that it can

determine the effect and meaning of one part on any other. *Best*, 184 S.W.3d at 390. All provisions of the agreement must be considered with reference to the whole instrument, and in harmonizing disparate provisions, terms stated earlier must be favored over subsequent ones. *Coker*, 650 S.W.2d at 393. Words will be given their "plain, common, or generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Best*, 184 S.W.3d at 390-91 (citing *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

The court's first task is to determine whether the guaranty agreement is ambiguous; this inquiry is a question of law for the court to decide. *Resolution Trust Corporation v. Cramer*, 6 F.3d 1102, 1106 (5th Cir. 1993) (citing *Temple-Inland Forest Products Corporation v. United States*, 988 F.2d 1418, 1421 (5th Cir. 1993)). "A contract is ambiguous when it is reasonably susceptible to more than one meaning, in light of the surrounding circumstances and after applying established rules of construction." *Commons West*, 5 F.3d at 127 (citation and quotation marks omitted). If a guaranty agreement is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law. *Coker*, 650 S.W.2d at 393-94. If the agreement contains an ambiguity, interpretation of the instrument is a fact issue, *Coker*, 650 S.W.2d at 394, and the guaranty must be strictly construed in favor of the guarantor, whose liability may not be extended by construction or implication beyond the precise terms of the

agreement. *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978); *Cox*, 949 S.W.2d at 530. Mere disagreement over a contract's interpretation, however, does not necessarily render an agreement ambiguous -- for an ambiguity to exist, both interpretations must be reasonable. *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.--Houston [14th Dist.] 2003, pet. denied) (citations omitted). "It is objective, and not subjective[,] intent that controls the meaning of the contract." *Commons West*, 5 F.3d at 127.

## B. Application

Haggard argues that paragraph 1 of the guaranty agreement limits his liability to the last to be repaid $500,000 and the interest accruing only on that amount. Haggard Brief at 2. According to Haggard, "Bank must first collect $1,100,000.00 of principal of the Partnership Debt -- or forgive that sum -- before seeking payment of the last $500,000.00 and all accrued interest thereon from Haggard." *Id.* at 4. Bank, citing paragraphs 4 and 5 of the guaranty agreement, counters that it "is not required to attempt to collect first from, or even sue, McKinney Meadows on the Note or attempt to collect on any mortgaged property before enforcing the terms of the Guaranty against Haggard . . ., [and] Haggard waived any statutory rights requiring collection from McKinney Meadows as a pre-requisite to collection from Haggard." Bank Brief at 2. Bank also contests Haggard's claim that he is liable for the interest accruing only on the last to be repaid $500,000. Bank argues that Haggard is liable

for the "accrued and unpaid interest on the full amount of the loan." *Id.* at 6-7. Both parties urge the court to grant them costs and attorney's fees. Haggard contends that he would have been entitled to recover such fees if he filed this declaratory action in state court. *See* Plaintiff Rodney O. Haggard's Brief in Opposition to Defendant's Motion for Summary Judgment ("Haggard Opposition") at 15 (docket entry 19). Bank disagrees, and argues that it is entitled to such fees under paragraph 15 of the guaranty agreement. *See* Bank Brief at 8. The court will address each of the above-stated issues in turn.

### 1. The "last to be repaid $500,000.00 of the principal"

Haggard argues that the guaranty agreement requires Bank to "either collect all but $500,000 in principal and all accrued interest thereon from other sources or waive its right to collect such sum" before pursuing him for the "'last to be repaid' $500,000 in principal." Haggard Opposition at 7-8. The guaranty agreement, according to Haggard, is a guaranty of collection and the phrase "last to be repaid" signifies the order in which the obligors on the note may be called upon by Bank to pay the principal balance of the loan. Haggard Brief at 8-9.

Bank responds that the contested phrase does not establish a condition precedent to collection, but rather it identifies the circumstances under which the amount of principal that Haggard guaranteed, as a co-maker of the note, will decrease below $500,000. *See* Defendant/Counter-Plaintiff Bank of the Ozarks, Inc.'s Reply

Brief in Support of its Motion for Summary Judgment ("Bank Reply") at 4-5 (docket entry 22). Bank claims that "[t]he 'last to be repaid $500,000.00' simply means that Haggard's liability on the Guaranty continues until McKinney Meadows pays the principal down to [an] amount less than $500,000.00. . . . [And] the guaranteed $500,000.00 portion remains a continuing obligation of Haggard unless and until the principal balance is reduced to an amount under $500,000.00." Brief in Support of Defendant/Counter-Plaintiff Bank of the Ozarks, Inc.'s Response to Rodney O. Haggard's Motion for Summary Judgment ("Bank Response") at 5 (docket entry 27). Bank argues that the guaranty agreement is an unconditional guaranty of payment, which does not require Bank, as the holder of the note, to pursue action against any other obligor before collecting from Haggard, the guarantor. *Id.* at 3-4. The court agrees with Bank.

The plain language of paragraph 1 of the guaranty agreement makes clear that Haggard "unconditionally, irrevocably and absolutely" guaranteed "the last to be repaid $500,000.00 of the principal balance of the Loan . . . ." Guaranty Agreement ¶ 1, *located in* Haggard Appendix at APP 009. Under Texas law, a guaranty is deemed an unconditional guaranty of payment unless the agreement specifies otherwise. See *Material Partnerships*, 102 S.W.3d at 265 (Frost, J., concurring) (citing *Cox*, 949 S.W.2d at 530). Nowhere in the guaranty agreement at issue here do the parties indicate an intention to create anything other than a guaranty of payment. The

phrase "the last to be repaid" cannot reasonably be understood to transform this guaranty of payment into a guaranty of collection.[2] Any argument to the contrary is precluded by paragraphs 4 and 5 of the agreement, which specify that Bank's "failure or refusal . . . to prosecute any action for the collection of any of the Guaranteed Indebtedness" does not "release[] or impair[]" the guaranty "in any manner whatsoever," and that Bank may enforce the guaranty against Haggard without first "institut[ing] suit or exhaust[ing] its remedies against Borrower or others liable on such indebtedness . . . ." Guaranty Agreement ¶¶ 4-5, *located in* Haggard Appendix at APP 010-012. Analyzing the guaranty agreement as a whole, so as not to render any of its language meaningless, leads the court to the only reasonable conclusion that the parties did not intend the guaranty agreement to be one of collection; rather, the agreement is an unconditional guaranty of payment that obligates Haggard, in the event of a default, to pay Bank $500,000.00 -- if that amount, or more, remains outstanding on the principal balance of the loan.

---

[2] Texas courts have consistently interpreted the term "guarantee" as imposing a primary obligation on the guarantor. See, *e.g.*, *El Paso Bank & Trust Company v. First State Bank*, 202 S.W. 522, 524 (Tex. App.--El Paso 1918, no writ); *Farmers & Merchants State Bank of Krum v. Reece Supply Company*, 79 S.W.3d 615, 617-18 (Tex. App.--Eastland 2002, pet. denied). In *El Paso Bank*, a bank sent a telegram to another bank stating that it would "guarantee payment" for a carload of watermelons to be shipped to another company. *El Paso Bank*, 202 S.W. at 524. The Texas appellate court held that the telegram created "an absolute guaranty of the payment of the money," and, therefore, a "primary and positive agreement" that did not require "demand upon the principal debtor." *Id.* "This result was reached even though the telegram did not expressly use the term 'primary obligation.'" *Farmers & Merchants*, 79 S.W.3d at 618 (citing *El Paso Bank*, 202 S.W. at 524).

Haggard cites *Stockton v. Buckley*, 333 S.W.2d 183 (Tex. Civ. App.--San Antonio 1960, writ dism'd), and *NH Properties Limited Partnership v. Mittleider*, 267 F. App'x 375 (5th Cir. 2008), as support for the proposition that the phrase "last to be repaid" identifies the "specific cohort of the debt" that Haggard guaranteed. Haggard Brief at 9-11. He argues that these cases demonstrate that "a guarantor who intends to limit his liability to a specific portion of the debt must specify the portion being guaranteed" and "[t]hat is precisely what Haggard did here." *Id.* at 10. *Stockton* and *NH Properties*, however, do not support Haggard's position.

In *Stockton*, the Texas Court of Appeals rejected two guarantors' attempt to cancel a contract by reason of fraud. 333 S.W.2d at 183-84. The plaintiffs there argued that the other party to the agreement "explained orally that the guarantors would guarantee only the first $7,500." *Id.* at 184. This, they claimed, constituted fraud because the contract, by its terms, did not limit the guaranty to the first $7,500. *Id.* The court flatly rejected the plaintiffs' claim because they failed to prove that the defendant in fact committed fraud. *Id.* *Stockton* in no way supports Haggard's contention that the phrase "last to be repaid" indicates the parties' intention to enter into an agreement whereby Haggard would be liable for the guaranteed amount only after the principal balance of the note is reduced below $500,000.

*NH Properties* is also not helpful to Haggard. In that case, the Fifth Circuit rejected the appellant's argument that he was liable only for the "first $1,236,180.00," because, as the Fifth Circuit held, the "Guaranty did not specifically state" that he only guaranteed "the first" or "only the first $1,236,180.00 that becomes due," and accepting the appellant's interpretation would render part of the guaranty agreement meaningless. 267 F. App'x at 376 (internal quotation marks omitted). The Fifth Circuit noted that the guaranty agreement contained the clause "'which is a portion of the rent . . . payable from the date hereof until February 1, 2006.'" *Id.* As explained by the Fifth Circuit, "There would be no need to define an end date of Mittleider's liability if the guarantee was intended to end as soon as $1,236,180.00 in rent was paid." *Id*. Refusing to render part of the agreement meaningless, the Fifth Circuit affirmed the district court's judgment on the issue. *Id.* *NH Properties* stands for the proposition that, under Texas law, a guaranty agreement should not be interpreted in manner that would contravene the plain language of the agreement and render part of the agreement meaningless. In the present case, accepting Haggard's interpretation of the guaranty agreement would render broad swaths of the agreement meaningless, particularly the proviso in paragraph 1 that states that Haggard "unconditionally, irrevocably and absolutely" guaranteed the last to be repaid $500,000, and the language in paragraphs 4 and 5 that makes clear that

Bank is not required to pursue any action against Meadows before collecting from

Haggard.[3]  The court refuses to do so.

---

[3]      Haggard attempts to sidestep this result by arguing that Bank is not "required" to take any action against Meadow because Bank could simply "forgive all but $500,000 in principal" before attempting to collect the last to be repaid $500,000 from Haggard. Reply Brief of Plaintiff and Counter-Defendant Rodney O. Haggard at 8 (docket entry 28).  This argument, however, is foreclosed by paragraph 4 of the guaranty agreement.  Haggard is essentially arguing that his obligation to pay $500,000 in guaranteed principal is delayed, notwithstanding the occurrence of an event of default, until Bank reduces the total outstanding principal balance to an amount below $500,000.  Haggard, however, overlooks paragraph 4, which clearly states that his obligations and duties under the guaranty agreement "shall not be released or *impaired* . . . on account of . . . (I) any action which Lender may take or omit to take by virtue of any document evidencing, governing, or securing any of the Guaranteed Indebtedness *or through any course of dealing with the Borrower* . . . ." Guaranty Agreement ¶ 4, *located in* Haggard Appendix at APP 011 (emphasis added). Under the terms of the agreement, Haggard's duty to pay $500,000 -- if that amount or more remains outstanding on the principal balance of the loan at the occurrence of an event of default -- is not impaired by Bank's failure or refusal to take any action against or forgive the amount owed by the borrower, Meadow.

        To the extent Haggard argues that Bank could have previously reduced the principal balance of the loan below $500,000 by foreclosing on the property, *see* Haggard Brief at 13 ("All the Bank would need to do is foreclose on that lien, and its debt would be fully satisfied without any need to pursue Haggard . . . ."), Haggard's position fails as a matter of law.  It is a well-settled rule in Texas that "the relationship between a creditor and guarantor does not ordinarily import a duty of good faith." *Federal Deposit of Insurance Corporation v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990).  As the Texas Supreme Court explained in *Coleman*, "[T]o impose a duty of good faith on a creditor in these circumstances is an impossible burden . . . .  It is difficult enough to determine when it is best to foreclose [on property] to protect one's own interests; it is virtually impossible to know when it is best to protect others' interests." *Id.* at 710.  Moreover, even if Bank had a duty of good faith, Haggard expressly waived it by relieving Bank from seeking to satisfy from the collateral at all. *See* Guaranty Agreement ¶ 4, *located in* Haggard Appendix at APP 011 (stating that the guaranty agreement "shall not be released or *impaired* . . . on account of . . . (q) any . . . failure or refusal of Lender . . . to foreclose or take or prosecute any action in connection with any lien, security interest or other right of security . . . ."); see also

(continued...)

Haggard protests any interpretation of the agreement as an unconditional guaranty because doing so, he maintains, would render meaningless the clause in paragraph 1 that states that his liability "would only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00." Haggard Brief at 11. The court disagrees. The quoted phrase does not create a right, it clarifies one. Haggard's reading ignores the poignant phrase "it being understood," which immediately precedes the phrase that he argues would be rendered meaningless under the court's interpretation of the agreement as an unconditional guaranty. "[I]t being understood" plainly indicates that the language to follow is intended to clarify that which precedes it. In other words, the statement "the amount guaranteed hereunder will only be reduced on a dollar for dollar basis as the principal balance of the Note is reduced below $500,000.00" *clarifies* the parties' objective intent behind using the phrase "last to be repaid." This is the only reasonable reading of paragraph 1 in light of the language used elsewhere in the agreement, which taken as a whole demonstrates the parties' intention to execute an unconditional guaranty.[4] Because

---

[3](...continued)
*Coleman*, 795 S.W.2d at 710.

[4]    Haggard's argument, in the alternative, that the guaranty agreement is ambiguous, Haggard Brief at 13, is without merit. The plain language of the agreement, taken as a whole, demonstrates that the only reasonable interpretation of the agreement is as an unconditional guaranty making Haggard liable for $500,000 upon an event of default unless the principal balance of the loan decreases below $500,000. Any other reading of the agreement would render paragraphs 4 and 5

(continued...)

the only reasonable interpretation of the guaranty agreement supports Bank's

position that, in the event of a default, Haggard is liable as a guarantor of payment

for up to $500,000 in principal on the loan, Bank is entitled to summary judgment

on its counterclaim that Haggard breached the guaranty agreement by failing or

refusing to pay the guaranteed amount after Meadow's defaulted on the loan and the

forbearance period lapsed.

### 2. *"All accrued and unpaid interest thereon"*

Haggard urges the court to adopt an interpretation of the guaranty agreement

that would limit his liability for the interest accruing only on the portion of the

principal balance that he guaranteed, that is, the interest accruing on $500,000.

Haggard Opposition at 10-11. Bank contends that such a reading is untenable

because the language of paragraph 1, coupled with the calculation of interest provided

in the note, demonstrate that the parties did not intend to limit Haggard's guaranty

of interest. Bank Reply at 6-7. Paragraph 1, in pertinent part, states that "the

liability of the Guarantor hereunder is limited to the last to be repaid $500,000.00 of

the principal balance of the Loan and all accrued and unpaid interest thereon from

time to time . . . ." Guaranty Agreement ¶ 1, *located in* Haggard Appendix at APP

009. Bank argues that the phrase "all accrued and unpaid interest thereon" modifies

the term "Loan," indicating the parties' intent to make Haggard liable for all of the

---

[4](...continued)
meaningless and contravene the objective intent of the parties.

interest that accrues on the principal balance of the loan. Bank Reply at 6. Haggard counters that a plain reading of paragraph 1 demonstrates that the word "thereon" unambiguously refers to the phrase "last to be repaid $500,000," limiting his liability for the interest that accrues on the last to be repaid $500,000. Haggard Brief at 12. Both the language of the agreement and Texas precedent best support Haggard's position.

In Texas, "[a] guarantor's liability on a debt is measured by the principal's liability *unless* a more extensive or more limited liability is expressly set forth in the guaranty agreement." *Material Partnerships*, 102 S.W.3d at 265 (Frost, J., concurring) (emphasis added) (citing *Houston Furniture Distributors, Inc. v. Bank of Woodlake, N.A.*, 562 S.W.2d 880, 884 (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ)); cf. *Resolution Trust Corporation v. Northpark Joint Venture*, 958 F.2d 1313, 1321 (5th Cir. 1992) ("We recognize that, as a general rule, the liability of a guarantor is equal to that of a its principal. . . . [But] there is an exception to the general rule: if the guarantor agrees, a guaranty contract can impose greater liability upon the guarantor than the note imposes on the principal.") (citations omitted)), *cert. denied*, 506 U.S. 1048 (1993). Here, the guaranty agreement expressly limits Haggard's liability to a portion of Meadow's liability. Paragraph 1 indicates the parties' objective intention to limit Haggard's liability, notwithstanding the liability of Meadows for the entire principal amount and all of the interest that accrues on that amount. The court must

give primacy to the fact that the parties executed a "limited" guaranty agreement, and Haggard's liability is not measured by the liability of Meadows. See, *e.g.*, *Federal Deposit Insurance Corporation v. Luxen*, No. 93-1844, 1994 WL 93299 at *1 (5th Cir. March 14, 1994).

Although paragraph 1 of the guaranty agreement states that the amount guaranteed includes "without limitation, *interest on all of the above amounts* as agreed upon between Borrower and Lender, or if there is no agreement, at the Highest Lawful Rate, as such term is defined in the Note," Guaranty Agreement ¶ 1, *located in* Haggard Appendix at APP 009 (emphasis added), this statement taken alone does not accurately reflect Haggard's liability under this limited guaranty agreement. The language that immediately follows specifically carves out Haggard's obligation, expressly limiting his liability "to the last to be repaid $500,000.00 of the principal balance of the Loan and all accrued and unpaid interest thereon from time to time . . . ." *Id.* The juxtaposition of "interest on all of the above amounts," a phrase that unequivocally encompasses all of the interest that accrues on the principal balance of the loan, and "the last to be repaid $500,000.00 of the principal balance of the Loan and all accrued and unpaid interest thereon," a phrase that tangibly limits Haggard's liability, makes it difficult to find that the parties intended anything other than to limit Haggard's liability to a fraction of both the principal and interest. Given the language of the agreement, and the implications of parties' failure to repeat the

language used elsewhere in the agreement to refer to all of the interest that accrues on the principal balance of the loan, the only reasonable construction of the agreement is one that limits Haggard's liability for interest in the same way that his liability for principal is limited. See *Luxen*, 1994 WL 93299 at *1.

In *Luxen*, the Fifth Circuit explained that, when applying Texas law to interpret a limited guaranty agreement, "[i]f the instrument were to provide a guarantee to pay all the interest on any indebtedness . . ., we would expect a full statement to that effect . . . ." *Id.* Here, no such language is present. If the parties intended to make Haggard liable for an unlimited amount of interest, they could have easily repeated the language regarding interest that appears just before the clause that limits Haggard's liability. Had the agreement stated that Haggard's liability was limited to "interest on all of the above amounts and the last to be repaid $500,000 of the principal balance of the Loan," the court would be more inclined to accept Bank's interpretation of the agreement because the only amount that would appear "above" that phrase is "$1,600,000.00." *See* Guaranty Agreement ¶ A, *located in* Haggard Appendix at APP 009 ("Lender has agreed to make a loan . . . in the maximum principal amount of $1,600,000.00 . . . ."). The agreement, however, is not so worded, and the court may not extend Haggard's liability under the guaranty "beyond its precise terms by construction or implication." *Reece*, 566 S.W.2d at 297. Thus, the only reasonable interpretation of the phrase "the last to be repaid $500,000.00 of

the principal balance of the Loan and all accrued and unpaid interest thereon" is one

that interprets the word "thereon" as referring to the amount that immediately

precedes it: "$500,000.00."[5]  Accordingly, the court concludes that the parties

intended to limit Haggard's liability for interest to the amount of interest that accrues

on the "last to be repaid $500,000.00" at the rate identified in the promissory note.[6]

*See generally* Promissory Note, *located in* Haggard Appendix at APP 004-008.  Haggard

is therefore entitled to judgment as a matter of law on his claim that he is liable for

the interest accruing only on the amount that he guaranteed under the limited

guaranty agreement.

---

[5]        Even if the court assumed for the sake of argument that this provision of
the guaranty agreement contains a patent ambiguity, the rule of *strictissimi juris*
commands the same result.  "The rule of strictissimi juris applies so that the guaranty
agreement is strictly construed and may not be extended beyond its precise terms by
construction or implication." *Reece*, 566 S.W.2d at 297.  Under Texas law, the
guarantor is a "favorite of the law" in whose favor an ambiguity in a guaranty
agreement must be strictly construed.  *Preston Ridge Financial Services Corporation v.
Tyler*, 796 S.W.2d 772, 780 (Tex. App.--Dallas 1990, pet. denied).  The rule of
*strictissimi juris* supports the interpretation of the agreement posited by Haggard,
limiting his liability for interest to only that which accrues on the last to be repaid
$500,000.00.

[6]        The court construes the guaranty agreement and the promissory note
together because "both were executed contemporaneously as a part and parcel of the
same transaction." *Commons West*, 5 F.3d at 127.  The promissory note defines the
interest rate as the "lesser of (I) the Highest Lawful Rate . . . or (ii) a floating rate
equal to the sum of the Prime Rate . . . plus one-half percent (½%) per annum."
Promissory Note ¶ 1, *located in* Haggard Appendix at APP 004.

### 3. *Attorney's Fees*

Both parties claim that they are entitled to costs and attorney's fees.  *See* Haggard Opposition at 15; Bank Brief at 8.  For his part, Haggard agrees that Fifth Circuit precedent prevents a party from recovering attorney's fees in an action for declaratory judgment unless "under the restrictive American rule, attorney's fees are allowed" or "controlling substantive law permits recovery."  *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).  Haggard concedes that neither exception applies in this case.  Haggard Opposition at 15.  Rather, he argues that he would have been entitled to recover attorney's fees under Texas procedural rules if he had filed this action in state court.  *Id.*  Haggard maintains that he raises the issue only "to preserve the point for possible appeal" because he believes that "[i]t is at least arguable that the decision in *Utica Lloyd's* conflicts with the Supreme Court's suggestion that, at least in most cases where subject matter jurisdiction is predicated on diversity, state fee shifting statutes are substantive in nature for purposes of applying *Erie*."  *Id.* at 15-16.

Bank, on the other hand, points to paragraph 15 of the guaranty agreement as evidence of its entitlement to recover attorney's fees and court costs.  Bank Brief at 8.  Paragraph 15 of the guaranty agreement states, "If Guarantor should breach or fail to perform any provision of this Guaranty, Guarantor agrees to pay to Lender all reasonable costs and expenses (including court costs and reasonable attorneys' fees to

the extent enforceable under the laws of the State of Texas) incurred by Lender in the enforcement hereof." Guaranty Agreement ¶ 15, *located in* Haggard Appendix at APP 013. Haggard does not contest his liability for costs and attorney's fees under the guaranty agreement. Since no material fact dispute exists as to Haggard's liability for attorney's fees and court costs under paragraph 15 of the guaranty agreement, Bank is entitled summary judgment on the issue. Accordingly, Bank's motion for summary judgment on its claim for attorney's fees and court costs is granted, and Haggard's motion for summary judgment on his claim for costs and attorney's fees is denied. Bank may make its motion for attorney's fees and court costs after final judgment is entered, in accordance with F.R. CIV. P. 54(d).

## III. CONCLUSION

For the reasons stated above, Haggard's motion for summary judgment is **GRANTED** in part and **DENIED** in part, and Bank's motion for summary judgment is **GRANTED** in part and **DENIED** in part. Counsel for Haggard and Bank shall confer and, within ten days of this date, submit a proposed form of judgment reflecting the rulings in this memorandum opinion and order. If counsel cannot agree on a proposed form of judgment, each shall submit -- within ten days of this date -- his/her version of a proposed judgment.

**SO ORDERED**.

January 14, 2011.

_A. Joe Fish_

A. JOE FISH
**Senior United States District Judge**