IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY O. HAGGARD | § | |
|     Plaintiff/Counter-Defendant | § | |
| v. | § | |
| | § | |
| BANK OF THE OZARKS, INC. | § | Civil Action No. 3:10-CV-800-G |
|     Defendant/Counter-Plaintiff/ | § | |
|     Third-Party Plaintiff, | § | |
| v. | § | |
| | § | |
| MCKINNEY MEADOWS, LP, | § | |
|     Third-Party Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred the Amended Application for Attorneys' Fees ("Amended Application") and Bill of Costs filed by Bank of the Ozarks, Inc. (the "Bank") on February 22, 2011 to United States Magistrate Judge Paul D. Stickney. The findings, conclusions, and recommendation of the United States Magistrate Judge follow:

**Background**

This suit concerns a guarantor's liability under a limited guaranty agreement ("guaranty" or "guaranty agreement") governed by the laws of the state of Texas. On October 13, 2007, the Bank loaned third-party defendant McKinney Meadows, LP ("Meadows") $1,600,000 to finance the acquisition of a tract of real property in McKinney, Texas. To evidence this loan, Meadows executed a promissory note (the "note") payable to Bank in the principal amount of $1.6 million. To secure repayment of the note, Meadows granted Bank a lien on the acquired property, and Haggard -- a limited partner in Meadows -- contemporaneously executed a guaranty agreement whereby he guaranteed "the last to be repaid $500,000 of the principal balance of the Loan and all accrued and unpaid interest thereon from time to time." The Bank is, and has been, the owner

and holder of the note at all times relevant to this dispute. On June 25, 2009, after Meadows failed to pay the note in accordance with its terms, the Bank sent both Meadows and Haggard a notice of default and opportunity to cure. On July 8, 2009, Bank sued Meadows and Haggard in the United States District Court for the Eastern District of Texas alleging breach of the note and the guaranty agreement, respectively (the "Eastern District Suit"). That suit was dismissed without prejudice after the parties negotiated a settlement and executed a forbearance agreement.

On April 20, 2010, a month before the forbearance period expired, Haggard commenced this action in the United States District Court for the Northern District of Texas, with jurisdiction based diversity of citizenship. Haggard sought a declaratory judgment that Bank could not pursue him on the guaranty agreement other than for the "last to be repaid $500,000" in principal and the interest accruing on that amount. Haggard requested that the court award him attorneys' fees and court costs. The Bank impleaded Meadows for breach of the note and indemnification. On January 4, 2011, the Bank foreclosed its lien and sold the property securing the loan for $975,000, which consequently reduced the indebtedness outstanding on the note, including interest, to $717,999.99.

The Hon. A. Joe Fish entered judgment, in pertinent part, that the Bank recover from Haggard the principal sum of $500,000 and accrued interest on such sum in the amount of $31,250, such sums being the amounts due and owing by Haggard to the Bank pursuant to Haggard's obligation under the guaranty agreement. The District Court also awarded post judgment interest at the legal rate and entered declaratory relief that the language of the guaranty agreement does not require Haggard to pay all "accrued and unpaid interest" on the note, but limits Haggard's liability to accrued interest on the $500,000 in principal that he guaranteed.

The District Court further ordered that the Bank should have and recover from Haggard its reasonable costs and attorneys' fees incurred in its enforcement of the guaranty against Haggard.

## ANALYSIS

### Attorneys' Fees

The Bank seeks to recover its reasonable attorneys' fees incurred in the enforcement of Haggard's guaranty, as allowed under the express terms of paragraph 15 of the guaranty agreement.

Paragraph 15 of the guaranty agreement provides:

15. Attorney's Fees and Collection Costs. If Guarantor should breach or fail to perform any provision of this Guaranty, Guarantor agrees to pay to Lender all reasonable costs and expenses (including court costs and reasonable attorneys' fees to the extent enforceable under the law of the State of Texas) incurred by Lender in the enforcement hereof.

The Bank supports its Amended Application and Bill of Costs with an Affidavit and detailed time records. Rodney O. Haggard ("Haggard") filed his response on February 23, 2011. The Bank filed its reply on March 9, 2011. The Court has considered the evidence and arguments of the parties.

In its Amended Application for attorneys' fees the Bank sought $35,301.64 in attorneys' fees and costs. However, in its Reply, the Bank withdraws its request for attorneys' fees and costs related to pursuit of the default judgment against Meadows in the amount of $2,694.68 ($2,487.50 in attorneys' fees and $207.18 in costs). Additionally, the Bank withdraws its requests for costs: related to the Eastern District suit in the amount of $515.00; related to its pursuit of default judgment against Meadows in the amount of $227.18; and related to its request in this case for $2,500 in mediation fees (designated in the Bill of Costs as "compensation of court-appointed expert witness fees.") In sum, the Bank is claiming $32,772.26 in reasonable

3

and necessary attorneys' fees and costs ($32,559.46 in attorneys' fees and $106.40 in court costs[1]) for enforcement of Haggard's obligation pursuant to the guaranty agreement and Judge Fish's January 14, 2011 award of attorneys' fees and costs.

Haggard contests the following amounts (originally $17,816.67, but reduced to $12,621,99 by the Bank's withdrawal of certain fees and costs in its Reply):

1. Remaining fees and expenses Incurred in the Eastern District Suit: $2,475.75;

2. Mediation Fees: $2,500.00; (withdrawn)

3. Fees for Forbearance Agreement: $907.50;

4. Foreclosure Fees and Expenses: $9,238.74; and

5. Fees and Expenses in Pursuing Meadows: $2,694.68. (withdrawn)

Haggard objects to the court costs of $106.40 because the Bank has failed to specify which costs it is seeking to recover in its Bill of Costs, as opposed to the expenses it is attempting to recover by way of its Amended Application. Additionally, Haggard specifically objects to the costs of $101.00 for filing fees in the foreclosure on the grounds that fees and expenses for the foreclosure should be disallowed.

To determine the award amount for attorneys' fees, the Court must first calculate the "lodestar" by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly billing rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court should consider the factors announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds, *Blanchare v. Bergeron*, 489 U.S. 87 (1989) when it

---

[1] The $106.40 in Fees of the Clerk now includes:$101.00 for filing fees incurred in foreclosure of the real property securing the note and $5.40 in "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

analyzes the reasonableness of the hours expended and the hourly rate requested.[2] *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Once the lodestar has been determined, it may be adjusted upward or downward if the *Johnson* factors, not included in the reasonable fee analysis, warrant such an adjustment. *Id*. However, the lodestar is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The Court has considered the Affidavit in Support of the Bank's Amended Application and the pertinent *Johnson* factors. The Court has vetted the detailed list of services performed by counsel, and the time recorded for those tasks. Haggard does not object to the hourly rates which range from $350 for lead counsel to $125 for other counsel and $85-$75 for legal services performed by paralegals. Considering the amount involved, the results obtained, the work performed, and similar awards in this court, the Court finds that the hourly rates requested by the Bank are reasonable.

A fee applicant must document the time spent and services performed. *Hensley*, 461 U.S. at 436; *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996). The Court must next: (1) determine the reasonable hours expended in enforcement of the guaranty agreement; (2) review the records; and (3) exclude all time that is excessive, duplicative, or inadequately documented. *Hensley*, 461 U.S. at 434; *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). The hours that survive this process are those reasonably expended on the litigation. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

---

[2] The factors enumerated in *Johnson* are: "(1) the time and labor required; (2) the novelty and difficult of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

## Attorneys' Fees for the Eastern District Suit

Haggard contends that the Bank may not recover $2,475.75 in attorneys' fees that are related to the parties' 2009 Eastern District Suit. The Court finds that the billing entries commencing June 23, 2009 and continuing through October 4, 2009 reflect attorneys' fees and costs that were incurred in that litigation.

In the Eastern District Suit, the Bank sued Haggard and Meadows on the note and guaranty. The Bank contends the Eastern District Suit and this action involve the same facts and the same parties and that the attorneys' fees in both suits are inextricably intertwined. The Court has reviewed the billing statement and finds that the attorneys' fees in each suit cover separate cases litigated at different times. The Court is unable to discern any intertwining of attorney tasks between the two suits. Accordingly, this argument is without merit.

Further, the Bank claims that the attorneys' fees in the Eastern District Suit should be awarded in this suit because they were incurred in enforcement of Haggard's guaranty. After several months of litigation, with the Bank's summary judgment pending and Haggard's response due in a few days, the parties settled the litigation and filed a Joint Motion to Dismiss.

The United States District Court for the Eastern District of Texas granted the parties' Joint Motion to Dismiss all claims asserted in that litigation and ordered that all costs be assessed against the parties that incurred them. The Bank argues that the Judgment does not preclude it from recovering attorneys' fees from that litigation because "attorneys' fees are not costs." The fact that attorneys' fees are not costs is not dispositive of whether the fees may be recovered here. Under 54(d)(2)(B)(i),[3] the Bank had fourteen days after the court entered

---
[3] "Unless a statute or court order provides otherwise, the motion [for attorneys' fees] must be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i).

6

judgment to seek attorneys' fees in that action. The Court before which the Bank was proceeding was the proper Court to decide if the request for fees was timely and if the fees incurred in that case were reasonable and necessary. The Bank chose to settle the case and to forego filing a request for its attorneys' fees incurred in that suit. This Court is not privy to the settlement agreement, but Haggard asserts that Meadows paid $11,050.53 of the attorneys' fees the Bank incurred in the Eastern District Suit. The Bank seeks recovery of the balance of its attorneys' fees in that case under Texas law but has cited no Texas cases which, despite the statutory time bar for attorneys' fees in federal cases, would make enforceable its request for the balance of the attorneys' fees incurred in the Eastern District Suit. Accordingly, the Court recommends that the District Court exercise its discretion to deny the Bank's request to recover attorneys' fees of $2,475.75 incurred in the Eastern District Suit.

## **Attorneys' Fees for Extension of the Forbearance Agreement**

Haggard also contends that the Bank may not recover $907.50 for 3.3 hours of work on April 7, 2010 related to the extension of a forbearance agreement. Haggard and Meadows had requested that the Bank agree to an extension of a forbearance agreement originally dated September 30, 2009. Haggard argues that the drafting of a forbearance agreement is not in furtherance of collecting on Haggard's guaranty, but is, in fact, the opposite, an agreement to forbear collection efforts on the guaranty.

The Court finds that the Bank spent a nominal amount of time drafting a new forbearance agreement in response to the requests of Haggard and Meadows to extend the old agreement. There is no evidence to suggest that by extending the deadlines of the old forbearance agreement, the Bank had, in any way, abandoned its ultimate goal of being paid under the terms of Meadows' note and Haggard's guaranty. Rather, the Bank must have concluded that allowing

7

the extension in the short-term would ultimately expedite the process of enforcing the note and guaranty. However, before the forbearance agreement expired, Haggard reinitiated litigation by filing this suit against the Bank. The District Court should award the Bank its attorneys' fees attributable to its preparation of a new forbearance agreement to expedite collection of the note and enforcement of the guaranty agreement without further litigation.

**Attorneys' Fees for the Bank's Foreclosure of the Real Property Securing the Note**

Haggard contends that the fees and costs for foreclosure of the Meadows' real property securing the note are not recoverable because they were not incurred in furtherance of enforcing Haggard's guaranty. Haggard asserted in his Original Complaint that he was not liable under the guaranty because an amount in excess of his guaranteed $500,000 of indebtedness remained due and owing on the note, and further, that the Bank was over-secured on the note because of its first lien on Meadows' real property. (Pl.'s Orig. Comp. at ¶¶ 11-12.) Haggard maintained this position throughout the litigation.

On January 4, 2011, in a non-judicial foreclosure, the Bank foreclosed its lien on Meadows' real property that served as collateral for the note that was the subject of Haggard's guaranty. In a January 14, 2011 Memorandum Opinion and Order, the Hon. A. Joe Fish, Senior Judge of the United States District Court for the Northern District of Texas, ruled that recovering against Meadows was not a pre-condition to Haggard's liability under the guaranty. *Haggard v. Bank of The Ozarks*, No. 3:10-CV-0800-G, 2011 WL 145194 (N.D. Tex. 2011). Nevertheless, at Haggard's urging, the Bank previously had foreclosed on Meadows' property. According to Haggard's own position which the District Court ultimately failed to accept, foreclosure was a precondition to enforcement of the guaranty. Therefore, Haggard is estopped to claim otherwise.

8

Accordingly, the District Court should overrule Haggard's objection to the Bank's request for $9,238.74 in attorneys' fees and costs for the Bank's foreclosure of Meadow's property.

## Objection to Costs

Haggard asserts that all the costs requested by the Bank's Bill of Costs are duplicative of expenses contained in the Amended Application. After the Bank's decision to withdraw some of the costs previously claimed, the Bank seeks $106.40 in costs, $101.00 for filing fees related to foreclosure of the real property and $5.40 in fees for exemplification and making copies necessarily obtained for use in the case. This Court has recommended that the Bank recover attorneys' fees and costs in the amount of $9,238.74, comprised of $4,820 in attorneys' fees and $4,418.74 in costs, all attributable to the foreclosure. The requested $101.00 in costs for the foreclosure is duplicative of the expenses awarded for the foreclosure. Further, the Court has examined the detailed slip listing for expenses and costs and does not find a listing or documentation of $5.40 for fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for used in the case. Therefore, the Court recommends that the District Court disallow the requested costs of $106.40 as duplicitous of other costs allowed and as lacking documentation.

The Court determines that the lodestar amount of reasonable attorneys' fees and expenses is $30,190.11 and finds no reason to enhance or reduce the lodestar amount for factors not subsumed in the lodestar amount. The novelty and difficulty of the question, skill required, special time limits imposed, preclusion of other employment, or undesirability of the case do not warrant adjustment of the lodestar amount. Other factors, such as whether the fee was fixed or contingent and the nature and length of the client relationship are not applicable in this case.

**Recommendation**

The Court recommends that the District Court reduce the total fees and costs requested by the Bank by $2,475.75 for attorneys' fees incurred in the Eastern District Suit and $106.40 in duplicative or unallowable costs. This provides a total reduction of the requested $32,772.26 by $2,582.15. Accordingly, the District Court should award the Bank judgment against Haggard for attorneys' fees and costs in the amount of $30,190.11.

IT IS SO RECOMMENDED this 31st day of May, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).